FILED
JUN - 4 2007
6-4-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT ILLINOIS
EASTERN DIVISION

WENDY A STREPEK, )
    Plaintiff, )
                                  **07CV3110**
v.                          **JUDGE GOTTSCHALL**
G & W INVESTMENTS, INC., an Illinois    **MAG. JUDGE ASHMAN**
Corporation, **PHIL MEISENGER**, an
Individual, and **JOSEPH GIGLIETTI**, )
an Individual, )
    Defendants.

## COMPLAINT FOR VIOLATION OF TRUTH IN LENDING ACT, REAL ESTATE SETTLEMENT PROCEDURES ACT, THE HOME OWNERS EQUITY PROTECTION ACT, ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, ILLINOIS HIGH RISK HOME LOAN ACT, ILLINOIS FAIRNESS IN LENDING ACT, AND COMMON LAW FRAUD

Now Comes the Plaintiff, Wendy A. Strepek, an individual resident of Illinois, by and through her attorneys, Robert W. Gray, Sr. and Ralph J. Schindler, Jr., and complains of the defendants, individually and collectively, as follows:

### NATURE AND STATUTORY BASIS FOR CAUSE OF ACTION

1.    This claim for damages is brought pursuant to violations of 15 U.S.C. §1601, et seq., the Truth in Lending Act (hereafter, "TILA") (COUNT ONE); the Real Estate Settlement Procedures Act 12 U.S.C. § 2601 *et seq.* (hereafter, "RESPA") (COUNT TWO); the Home Owner Equity Protection Act, 15 U.S.C. §1630 (COUNT THREE); the Illinois Consumer Fraud and Deceptive Business Practices Act, 810 Ill Comp. Stat. § 505/2 et seq (COUNT FOUR); the Illinois Fairness in Lending Act, 815 Ill. Comp. Stat. 510/1 et seq. (COUNT FIVE); the Illinois High Risk Home Loan Act, 815 Ill. Comp. Stat. §137 *et seq.* (COUNT SIX); and common law fraud (COUNT SEVEN).

1

## JURISDICTION AND VENUE

2. Subject matter jurisdiction for Counts I - III arises under 28 U.S.C. §§ 1331, in that the claims concern issues of federal questions, namely violations of TILA, RESPA, and HOEPA. Jurisdiction also arises for Counts IV – VII under 28 U.S.C. § 1367(a) as such claims are so related to the facts of the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

3. This Court has personal jurisdiction over the defendants Meisinger and Giglietti in that both are residents of this jurisdiction. This Court has personal jurisdiction over defendant G & M Investments, in that it is an Illinois corporation that has conducted business in this jurisdiction.

4. Venue is proper in this Court under 28 U.S.C. § 1391 (b)(1) in that all the parties are residents of this court's jurisdiction. Additionally, venue is proper as to all defendants pursuant to 28 U.S.C. § 1391 (b)(2), in that the defendants have conducted substantial business in this court's jurisdiction and the acts that give rise to the complaint are the same acts that give rise to jurisdiction.

## THE PARTIES

5. The Plaintiff is an Illinois resident with domicile at 14728 Trumbull Midlothian, Illinois.

6. The defendants, individually, collectively, and as a business entity, hold themselves out to Illinois consumers as a company that provides loans to real property owners.

7. G & M Investments, Inc., is an Illinois corporation, with its principle place of business located at 27475 Ferry Road Warrenville, Illinois 60555. The registered agent

2

of this corporation is Andrea Schreiber, with its registered office at 125 Water St. Naperville, Illinois 60540. Joe Giglietti is the President of G & M Investments, Inc. and Phil Meisinger is the Secretary of G&M Investments, Inc.

8. Joe Giglietti is an Illinois resident, located at 866 Middlebury Avenue Aurora, Illinois.

9. Phillip Meisinger is an Illinois resident, located at 2978 Kendridge Ln Aurora, Illinois.

## OPERATIVE FACTS

10. On or about October 26, 2005, Strepek was named as a defendant in the foreclosure action, *Wells Fargo Bank v. Wendy Strepek,* filed in the Cook County Circuit Court, Chancery Division, Number 05 CH 18301. On or about December 14, 2005, an order was entered appointed a selling officer.

11. On or about May 20, 2006, Strepek did receive, via U.S. mail, an advertisement from the defendants, offering a home mortgage loan.

12. On or about May 25, 2006, Louis D'Amico, Jr., Strepek's live in boyfriend, did contact G & M in reliance on the advertisement.

13. On or about May 25, 2006, at the time of the call from D'Amico, the defendants did offer to provide a loan, secured by Strepek's personal residence, to allow repayment of the past due amount to Wells Fargo Bank.

14. On or about May 25, 2006, D'Amico spoke with defendant Meisinger, an officer and principle investor in defendant G&M Investments, Inc., in reference to the proposed loan. During this phone conversation, Meisinger represented that G & M would assist

3

Strepek through the loan, which would be secured by the home. Meisinger, however, stated that G&M's attorney had not produced the paperwork G&M required.

15. On or about June 4, 2006, D'Amico again spoke with Meisinger and reiterated that payment of the outstanding amount to Wells Fargo Bank was due the following day. G&M again reiterated that its attorney had not drafted the loan papers, but assured D'Amico that loan papers would be drafted and that Strepek was not going to lose her home.

16. On or about June 5, 2006, D'Amico again contacted Meisinger and reiterated that payment was due that day or Strepek would lose her home to Wells Fargo. Meisinger again reiterated that no papers were drafted, as of yet, but that D'Amico and Strepek should come to G&M's office.

17. On or about June 5, 2006, D'Amico and Strepek did go to the office of G&M Investments, Inc., to consummate the loan proposed, in order to save Strepek's home from the foreclosure sale pending.

18. Upon D'Amico and Strepek's arrival at the office of G&M Investments, Meisinger again stated no papers were drafted, but that the loan would be issued in the amount of $16,000.

19. After this brief discussion and on their way out the door of the office, Meisinger gave Strepek a document entitled "WARRANTY DEED" for Strepek to sign, telling her it was a standard loan document. Strepek did not understand the true nature of the document at the time she signed it.

20. At no point did Strepek complete a loan application of any kind.

4

21. At no point was Strepek presented with any documents other than the WARRANTY DEED until after the completion of the loan.

22. On or about June 5, 2006, G&M investments, through its managing partner, Phil Meisinger, did issue a check in the amount of $16,000 to Strepek, which was immediately transferred to the attorney for Wells Fargo Bank, in satisfaction of the foreclosure action.

23. On or about July 1, 2006, after completion of the loan transaction, G&M did contact Strepek stating that loan papers were completed, that they would be faxed over for signatures and that the cost of the loan increased from the originally agreed upon $4,000 interest, to $5,000 interest.

24. Strepek did not sign the papers discussed in paragraph 23.

25. On or about, February 1, 2007, Strepek did contact the undersigned counsel because Wells Fargo again, served Strepek with foreclosure action. The undersigned did request all documents relating to the transaction with G&M.

26. The document produced was the WARRANTY DEED, which Strepek did sign on June 6, 2006.

27. Strepek also produced a document entitled, "STATEMENT BY GRANTOR AND GRANTEE", which purported to be a verification of grantor of no consideration for transfer of their home. Strepek's signature on this document was forged.

28. The undersigned counsel, after reviewing with Strepek the potential ramifications of G&M's possession and recording of a WARRANTY DEED and the potential for G&M to introduce a bona fide purchaser for value into the situation, in addition to the

5

new impending foreclosure action against Strepek by Bank, did advise Strepek to sell the home to D'Amico's father, Louis D'Amico, Sr.

29. On or about March 26, 2007, a real property closing took place in Oak Brook, Illinois, whereby G&M Investments did convey the home commonly referred to as 14728 Trumbull, Midlothian, Illinois to Louis D'Amico, Sr.

30. At the aforementioned closing, the defendants required their attorney's fees and all closing costs to be paid by Strepek.

31. At the aforementioned closing, the defendants required repayment of their $16,000 loan in addition to approximately $5,000 in interest. This loan was repaid in less than one year, which means the interest that G&M charged for this transaction was in excess of 35% APR.

32. At no point, did any of the defendants provide Strepek with any of the requirements outlined in the Truth in Lending Act, 15 U.S.C. §1601 et seq. in connection with the June 2006 loan.

33. At no point, did Strepek intend on conveying her home to the defendants instead, believing that the arrangement was a second mortgage.

34. Strepek and D'Amico entirely relied on the defendants for their loan information.

35. The defendants likewise denied Strepek the 3 day right of review for the documents that were signed.

36. As a direct and proximate result of the defendant's actions, Strepek has suffered damages in an amount to be proven at trial and shall include: a.) the $5,000 in interest received by G&M on the loan, b) the $5,000 in costs to clear the title caused by G&M's

transfer from Strepek to G&M, c) the costs of this litigation, including attorneys fees, d) further costs to be determined at trial.

## COUNT ONE: TRUTH IN LENDING ACT

37.  Plaintiffs incorporate paragraphs 1-36 above as if the same were reprinted here in their entirety.

38.  Regulation Z, 12 CFR § 226, is meant to implement the Truth in Lending Act. "Hypertechnicality" in the interpretation of TILA and Regulation Z has been said to reign supreme in the Seventh Circuit. *Smith v. Cash Store Mgmt.*, 195 F.3d 325, 328 (7th Cir. 1999).

39.  The purpose of TILA is to "promote the informed use of consumer credit by requiring disclosures about its terms and cost." 12 CFR § 226.1(b). Under § 226.4(a), the "finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by a consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." *Id.* at 226.4(a). Under Section § 226.4(c)(7) certain real estate related fees are excluded only "if the fees are bona fide and reasonable in amount." Regulation Z further requires that all disclosures be made "clearly and conspicuously in writing, in a form that the consumer may keep." 12 CFR § 226.17(a)(1). Further, the Regulation requires a separate written itemization of the amount financed, which shall include, "the amount of any proceeds distributed directly to the consumer . . . any amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons." *Id.* at § 226.18(c)(1)(i), (ii). Under §226.23(a)(3), the right to rescind the mortgage agreement is automatically extended to three years if the disclosure requirements are not complied

with. *Washington v. Ameriquest Mortgage*, 2006 U.S. Dist. LEXIS 50804 at 25 (N.D. Ill. July 11, 2006). Additionally, the right to rescind must itself be disclosed at least three business days prior to the mortgage, "clearly and conspicuously in writing, in a form that the consumer may keep." *Id.* at § 226.31 (b)(1), (c).

40. As alleged, plaintiff received no TILA disclosures . . . at any point.

41. As a result of the defendants failure to disclose any information about the proposed transaction, Strepek was not afforded the opportunity to shop for a real mortgage, instead being swindled into signing the deed to her home to the defendants. As a direct and proximate cause of the violations, Strepek was forced to pay, approximately, $5,000 in interest to the defendants (a rate of approximately 35%), and approximately $5,000 in settlement costs to secure title to her home and stop the defendants from selling the home to a buyer in good-faith.

THEREFORE, Strepek requests this Court rescind any agreement that existed between Strepek and the defendants, award her the greater of her actual damages or the statutory damages, her costs of litigation for this action, including attorney fees, and any other relief this Court deems just and reasonable.

## COUNT TWO: REAL ESTATE SETTLEMENT PROCEDURES ACT

37. Plaintiff incorporates paragraphs 1 – 36 as if the same were reprinted here.

38. The Real Estate Settlement Procedure Act requires the completion of and delivery to the borrower at or before closing of the standard form settlement cost disclosure statement, the HUD-1. 12 U.S.C. § 2603.

39. Strepek never received a HUD-1 for the mortgage from the defendants.

40. As a direct and proximate result of the defendants failure to comply with RESPA, Strepek has been damaged by entering into a loan for which the rate of interest exceeds 30%, and for which Strepek had no idea that the costs to pay the loan would include the costs to transfer title back from G&W to Strepek (or Strepek's father-in-law).

THEREFORE, Strepek requests this Court rescind any agreement between Strepek and the defendants, enter judgment against the defendants for the greater of the statutory damages or the actual damages to be proven at trial, in addition to the costs of this litigation, including attorney fees.

## COUNT THREE: HOME OWNERS EQUITY PROTECTION ACT

41. Plaintiff incorporates paragraphs 1 – 36 as if the same were reprinted here.

42. The Home Owners Protection Act (HOEPA), 15 U.S.C. §1639, requires additional disclosures for all loans secured by a residence where the interest rate is higher than 8% greater than the Treasury rate.

43. A failure to provide the additional notices under HOEPA amounts to a TILA failure, resulting in the automatic three year right of rescission, statutory damages, actual damages, including the costs of litigation and attorney fees.

44. Here, the actual interest charged on a $16,000 eight-month loan was $5,000, an interest rate over 45%, and three times greater than the HOEPA threshold limit.

45. Additionally, Strepek alleges that the actual cost of this loan includes the additional costs of settlement to transfer title from G&M Investments back to a third party that could properly take title to the residence. This amounts to an additional approximate $5,000, making the real cost of receiving this loan from the defendants $10,000 on a $16,000 eight-month loan. Under either the interest rate of paragraph 44 or

the interest described in this paragraph, this loan was subject to the requirements of HOEPA.

46. As alleged herein, Strepek received absolutely no disclosure documents. In fact, Strepek received no documents whatsoever in connection with this transaction, other than the WARRANTY DEED fraudulently presented as a standard loan document.

47. Strepek's damages are proximately caused by the defendants' HOEPA violations, in that the failure to comply with HOEPA directly led to Strepek's failure to seek a more legitimate source of funding and a failure to understand the actual costs of this loan.

THEREFORE, Strepek requests this Court rescind any agreement between Strepek and the defendants, enter judgment against the defendants for the greater of the statutory damages or the actual damages to be proven at trial, in addition to the costs of this litigation, including attorney fees.

## COUNT FOUR: ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

48. Strepek incorporates paragraphs 1 – 36 as if reprinted here.

49. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 *et seq.* forbids the use of fraudulent or oppressive business practices, intentionally or negligently, by a supplier of goods or services to the consumer of those goods or services. *See generally* Robert W. Gray, "*The Applicability of Constructive Eviction, Implied Warranty of Habitability, Common-Law Fraud, and the Consumer Fraud Act to Omissions of Material Facts in a Commercial Lease,*" 38 J. Marshall L. Rev. 1289 (2005).

50. As alleged, Strepek claims the defendants have violated the Consumer Fraud Act by not providing the TILA disclosures, not providing the HOEPA disclosures, by falsely

claiming that the "GENERAL WARRANTY DEED" was simply a standard loan document, by charging an interest rate of over 45%, by incurring additional costs of approximately $5,000 because of the fraudulent nature of the transaction, by forging Strepek's name on a certification for property transfer tax purposes, and by falsely promoting themselves through the mail as a legitimate mortgage provider.

51. As alleged, Strepek claims the defendants are in the business of providing mortgages and financing. Further, that Strepek was never in that business and obtained this mortgage as a consumer of the defendants' business.

52. As a direct and proximate cause of the defendants' deception and oppressive actions, Strepek has been harmed by the payment of egregious interest rates and additional settlement costs to secure title to her residence.

53. As alleged, Strepek contends the defendants acted with willful disregard for her rights or in reckless disregard of the same.

THEREFORE, Strepek requests this Court enter judgment in her favor for her actual damages, an award for punitive damages to deter future violations on the defendants part, and an award for the costs of this litigation, including attorney fees.

## COUNT FIVE: ILLINOIS FAIRNESS IN LENDING ACT

54. Plaintiff incorporates paragraphs 1 – 36 as if reprinted here in their entirety.

55. The Illinois Fairness in Lending Act, 815 Ill. Comp. Stat. § 120 *et seq.*, makes it unlawful to engage in equity stripping or loan flipping and allows this Court to enter an award for actual damages and costs of this litigation. 815 Ill. Comp. Stat § 120/3, 5. Section 120/2(d) of such Act (815 ILCS 120/2(d)) defines "Equity stripping to mean "to assist a person in obtaining a loan secured by the person's principal residence for the

primary purpose of receiving fees related to the financing when (i) the loan decreased the person's equity in the principal residence and (ii) at the time the loan is made the financial institutions does not reasonably believe that the person will be able to make the scheduled payments to repay the loan. Section 20/5(a) provides that any aggrieved person may bring an action to recover "actual damages" and costs for such violations.

56. Strepek realleges that, at no point, was a loan application completed or requested.

57. At the time of the making of the loan, the principal mortgage to Wells Fargo was for approximately $97,000.

58. At the time of the making of the loan, the value of the subject property was well in excess of $113,000 – the amount of the principal mortgage on the property and the amount of the loan made by G&W to Strepek.

59. On information and belief, since there was no loan application or verification of creditworthiness, Strepek alleges defendants granted this loan without regard to the plaintiff's ability to repay the loan and that, the purpose of the loan (and the signed WARRANTY DEED) was to strip Strepek of the equity in the home built up over years of payments to Wells Fargo.

60. As a direct and proximate result of the defendants' action, Strepek entered into a loan she would not otherwise have entered into (not being qualified for the loan), which has cost Strepek an egregious amount of interest and additional costs to secure the title to her home.

THEREFORE, Strepek requests this Court rescind any agreement between Strepek and the defendants, enter judgment against the defendants for the greater of the

statutory damages or the actual damages to be proven at trial, in addition to the costs of this litigation, including attorney fees.

## COUNT SIX: THE ILLINOIS HIGH RISK HOME LOAN ACT

61. Plaintiff incorporates paragraphs 1-36 as if reprinted in their entirety here.

62. The Illinois High Risk Home Loan Act, 815 Ill. Comp. Stat. §137 *et seq.*, requires Illinois lenders to act with good faith toward borrowers, forbids fraudulent practices, and requires all lenders to provide an additional disclosure before consummation of a high-risk loan. 815 Ill. Comp. Stat. §137/25, 95. A high risk home loan is defined as one that bears an interest rate that exceeds the yield on U.S. Treasury securities of comparable maturity by more than 6% in the case of first mortgages or by more then 8% in the case of second mortgages. A failure to provide the notice or to abide by the "good faith" standard is a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. 815 Ill. Comp. Stat. §35 (b). Section 137/70 of the Act (815 ILCS 137/70) provides, "No lender shall transfer, deal in, offer, or make a high risk loan where the loan amount exceeds the value of the property securing the loan." Section 137/20 of the Act (815 ILCS 137/20) requires that the lender verify the borrower's ability to repay the loan. This provision requires "at a minimum" that the borrowers prepare and submit to the lender personal income and expense statements, (815 ILCS 137/20(1)) and that the borrowers income be "verified by means of tax returns, pay stubs, accounting statements, or other prudent means." (815 ILCS 137)).

63. As alleged, Strepek's loan was well above the statutory minimum threshold for governance under the Illinois High Risk Home Loan Act, in that the interest rate is above 45% APR.

64. As alleged, Strepek was never asked to complete, nor completed, an application for this loan.

65. As a direct and proximate result of the defendants' violations of the Illinois High Risk Home Loan Act, Strepek has entered into a loan for which she could not foreseeably repay, damaging Strepek in an amount not less than the approximate $5,000 in interest for the eight-month $16,000 loan and the approximate $5,000 in closing costs in order to secure title to her home away from the defendants.

THEREFORE, Strepek requests this Court enter judgment in her favor in an amount not less than $10,000, plus the costs of this litigation, including attorney fees.

## COUNT SEVEN: COMMON LAW FRAUD

66. Strepek incorporates paragraphs 1 – 36 herein as if reprinted in their entirety.

67. To sustain a claim of common law fraud in Illinois, Strepek must show 1) a false or fraudulent material statement, (or an omission of a material fact where there is duty to disclose the fact or where inquiry of the fact was made) 2) made with knowledge of its falsity, 3) with the intent that the other party rely on the statement, 4) where the other parties reliance is reasonable, 5) and the plaintiff actually relies on the statements, 6) which proximately cause the plaintiffs damages. *See generally* Robert W. Gray, *"The Applicability of Constructive Eviction, Implied Warranty of Habitability, Common-Law Fraud, and the Consumer Fraud Act to Omissions of Material Facts in a Commercial Lease,"* 38 J. Marshall L. Rev. 1289 (2005).

68. Here, the defendant fraudulently stated that the "GENERAL WARRANTY DEED" was part of the standard loan documents, when the defendant knew the same were not.

14

69. Strepek had no idea what the ramifications of signing a GENERAL WARRANTY DEED were.

70. As a company that hold themselves out to the public as professional mortgage brokers, Strepek's reliance on the defendants' statements was reasonable.

71. Strepek did actually rely on the statements to sign the DEED.

72. Signing the deed stripped Strepek of title to her residence, making it impossible to find another mortgage to satisfy the late payments to Wells Fargo, when that bank filed a foreclosure action. In order to secure the residence, Strepek was required to sell her home to Louis D'Amico, Sr.. This sale required Strepek to incur additional settlement costs of approximately $5,000.

73. Strepek further alleges the defendants' fraud is apparent where there is no signed agreement stating the terms of the loan, said terms being determined after the defendants were in possession of the signed GENERAL WARRANTY DEED.

74. Strepek alleges that as a direct and proximate cause of this fraudulent act, she was further damaged by being required to pay over 31% interest for a home mortgage or to have the defendants sell their residence.

75. Strepek alleges that the she inquired of the defendants for a mortgage loan, and as such, the defendants were under a duty to disclose relevant material facts surrounding the loan, such as that the loan procedures and interest were in violation of state and federal law, as described in Counts I – VI.

76. Strepek further alleges the defendants committed fraud by forging Strepek's signature on certain documents tendered to Cook County Recorder of Deeds and Tax Assessor's Office.

77. Strepek alleges the defendants' actions show a willful and reckless disregard for Strepek's rights and the defendants' legal responsibilities.

THEREFORE, Strepek requests this Court enter judgment in her favor for her actual damages caused by the defendants fraudulent actions, an amount for punitive damages to deter the defendants future misconduct, and an award for costs of this litigation, including attorney fees.

Respectfully Submitted,

*/s/ Robert W. Gray*

Robert W. Gray, Sr.

The Law Offices of Ralph J. Schindler, Jr.
Robert W. Gray, Sr. (attorney # 26381-45)
53 West Jackson Blvd., Ste 818
Chicago, Illinois 60604
(312) 554 - 1040